# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### APRIL TERM, 1841.

---

## ABRAHAM J. BERRY v. The EXECUTORS of ISAAC J. VAN WINKLE, deceased.

Where by the terms of a lease it was agreed that the lessee should make improvements on the demised premises, at his own costs and charges, and that at the expiration of the term all the improvements so made should be and remain the property of the lessor, he paying to the lessee the value thereof—the improvements are to be valued as they were at the time the lease expired.

If the lessor covenant that the lessee may, at any time during the term, erect a carding and fulling mill, and any other machinery, upon the demised premises, and that at the expiration of the term all improvements made upon the lot shall be the property of the lessor, he paying for the same; the improvements to be paid for by the landlord are such only as he had previously authorized to be made.

THE bill in this cause was filed to compel the specific performance of a covenant contained in a lease, that at the expiration of the term, the improvements made on the demised premises by the lessee, should remain the property of the lessor, he paying the lessee the value thereof, or satisfying him for such improve-

[Berry v. Ex'rs of Van Winkle.]

ments.* The cause was heard upon the pleadings and proofs, and at October term, 1839, a reference to a master was ordered, to ascertain the value of the improvements at the termination of the lease, and the amount due the defendants for rent. The master having made his report, exceptions were filed by both parties, and the cause came on for hearing at April term, 1841, upon the exceptions to the report.

*A. O. Zabriskie,* for complainant.

*J. Speer,* for defendants.

Cases cited by defendants' counsel. 2 *Kent's Com.* 280; *Hilliard's Abridg't,* 12; 9 *East.* 245, *n.*; 4 *Cond. Eng. Chan. R.* 428, 499.

THE CHANCELLOR. When this cause was heard on the pleadings and proofs, the relief sought by the complainant in this court was denied, except compensation for improvements placed on the property during the lease. A reference was directed to a master, to ascertain the value of such improvements as were made within the scope and meaning of the covenants in the lease, and also the amount of rent due the defendants. The master has made his report on these subjects, to which exceptions have been filed by both parties, and I am now to settle those exceptions.

There are two important questions on which the parties differ widely, and they run through the whole case. If these are satisfactorily settled, it will be seen that much of the difficulty in the cause will be at an end.

The first of these relates to *the time* at which the valuation of the improvements should be made. Upon this subject I am confirmed in the opinion heretofore expressed, that they must be valued as they were at the time the lease expired. This was a point on which the counsel for the defendants desired an opportu-

* For the nature of the bill and answer, see ante, page 269.

[Berry v. Ex'rs of Van Winkle.]

nity to be further heard ; and I remember well to have assented that he might have the order so drawn as to require the master to report the state of the improvements, as well at the date of the order, as at the expiration of the lease ; and on the final hearing I would adopt the one or the other, as might seem to be proper. Through inadvertence the order was not so modified, but followed the opinion as delivered. I have, nevertheless, thought it my duty to review that question, and, as I still think I can estimate the improvements only as they were at the end of the lease, there exists no necessity for any change in the order as it stands. The lease expired on the 7th of March, 1835, and this bill was filed on the 23d of the same month, a few days afterwards. The relief sought, was for compensation for certain improvements placed by the tenant on the premises, which the landlord covenanted to pay for. Had not the complainant been entitled to such compensation at the time of filing his bill, he must have failed in his suit altogether ; but the court decided otherwise, and there is no propriety in referring the time for fixing this valuation to any later period. The lease contemplates a settlement of this whole question at its expiration : then it is that the buildings are to be examined, and a final adjustment made. Every thing looks to that time. The subsequent controversies between the parties, or any suits they may have brought, cannot vary their legal or equitable rights under the lease. Nor can it be said that the order made by a former chancellor, staying proceedings in an ejectment brought by the landlord, kept him out of possession after the lease expired. That ejectment was brought to recover the possession before the lease expired, for non-payment of rent, under a clause in the lease ; but he was at liberty after it expired, if any real difficulty existed about the possession, to bring a new action. He never did so, and it would seem quite as probable, from the case, that neither party at that time wanted the possession. However that may be, no new suit was brought. The remedies, in case the tenant unlawfully holds over, are ample, and some of them penal in their character. In every view, then, it appears to me that we must value the im-

[Berry v. Ex'rs of Van Winkle.]

provements as they were when the lease expired, and interest upon the amount must be carried forward to the date of the master's report.

Another and a still more important consideration, is, to ascertain and settle what are the improvements the defendants are bound to pay for under the lease. The true construction of the writing in this respect is now for the first time presented, though it may be considered the most important question in the cause. It was not made a point on the hearing for instructions to the master in settling the reference, and it is probable at that time the difficulties which have since arisen as to its true meaning were not anticipated. I confess there are difficulties in its construction, and it is no way strange that the master should have felt himself under some embarrassment. The lessor, Mr. Van Winkle, (a farmer, I think,) was the owner of a water power with lands adjoining, and leased them for the term of twenty-one years. At the time, there was an old saw-mill on the premises. The rent reserved was only forty dollars a year. In the lease he makes this covenant: That the lessee and his assigns might, at any time during the demise, at his or their own proper cost, erect "a carding and fulling mill or any other machinery;" and that, at the expiration of the demise, all improvements made upon the lot should be the property of the lessor, he paying for the same. The tenant went into possession, erected buildings, put machinery into them, and among the rest built a saw-mill with its appendages. It is clear that the landlord, although he agrees to pay for all improvements placed upon the lot, had reference only to such as he had previously authorized to be made. The tenant had no power to place there what he pleased, and then ask compensation for them. This could never have been the intention of the parties, or they would not have previously specified the buildings the tenant might erect. The words "all improvements," which the landlord agreed to pay for, has reference to all such only as by the previous parts of the lease it had been agreed might be placed on the lot. That license extended only to " a carding and fulling mill or any other machinery."

51

As to the buildings, there is no great difficulty. They consist of little else than one carding and fulling mill with their appendages, and the saw-mill. This saw-mill was originally built as a cover to the wheel, and afterwards machinery was placed in it for sawing lumber. The machinery creates the great difficulty. The complainant insists that the lessor was bound to pay for all the machinery there, whether part and parcel of the building or loose and separated from it. And there is some evidence of a portion of the machinery having been carried away, and just before the expiration of the lease brought back and piled up, and this is claimed under the lease. I cannot place such a construction on this instrument. The machinery contemplated could have been nothing beyond such as is permanent and essential to the building itself as a carding or fulling mill, with liberty to change it if it became necessary. It was no doubt seen, that it might be desirable to change the course of business, and if so, they had a right to adapt it accordingly, and then the landlord was to pay for the machinery thus substituted. The buildings as erected, may therefore be properly valued, with their permanent fixtures, but nothing that is moveable. I know it is difficult to arrive at certainty as to the right limit in ascertaining what is permanent and what not, but that arises from the character of the covenants. It was at best a hard bargain on the part of the landlord, but to declare him liable for any thing and every thing which may be termed machinery, might bring on him utter ruin. I know but one method, and that is, to consider the different items in the master's report, and from the evidence in the cause and the agreement, make such allowance as shall seem to be most agreeable to justice; and I am fully aware that in so doing we cannot arrive at as much certainty as we could desire.

The first item in Schedule A. No. 1, is for the wood work of the buildings, five hundred dollars. This item I shall not disturb. Though impressed that it is a liberal allowance, yet it is warranted by the evidence, and the buildings are a fair subject of charge. The second item is for mill-wright work and gear-

ing, three hundred dollars. This item should be reduced, and I shall, from considering the evidence, place it at two hundred dollars. There can be nothing more uncertain than estimating mill-wright work by the lump. The third item, for screws and box, &c. seventy-four dollars and sixty-three cents, I reject altogether. The fourth item, of one hundred and forty-three dollars and forty-two cents, is reduced to one hundred dollars. The fifth item, of fifty dollars and seventy-two cents, is disallowed; and the sixth item, of two hundred dollars, is reduced to one hundred dollars. This last item, of two hundred dollars, for stone wall, &c. I have had some doubts whether by the agreement any charge can be made for. The stone was certainly to be found by the lessor, but at all events, the first item for the building, with one hundred dollars, is sufficient to cover any claim on this account. This valuation will give the complainant for his improvements, chargeable against the defendants at the expiration of the lease, on the 7th of March, 1835, the sum of nine hundred dollars, with interest from that date; and from the best judgment in my power to make, from a case so complicated and perplexed, I believe it to be as much as justice between man and man will authorize the court in allowing.

The master's report as contained in Schedule A. No. 2, is right, except as to the mode of calculating interest. By casting interest upon the amount of rent due up to the 7th of March, 1835, and then on the whole amount to the date of the order, interest has been cast upon interest. This must be corrected. The amount of rent, with interest, should be deducted from the amount allowed the complainant for his compensation at the expiration of the lease, and interest calculated on the balance.

By this result the complainant's exceptions are overruled, except the fifth, which relates to compound interest, which is allowed. Of the defendant's exceptions, the second, third, fourth, fifth, sixth, eighth, tenth, and thirteenth, are sustained; the first, seventh, ninth, eleventh, and twelfth, are overruled.

[Berry v. Ex'rs of Van Winkle.]

The case must be referred back to the master to restate the account, according to this opinion, unless the counsel, to save that expense, shall agree on the calculation.